## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

DONNA DE LOS SANTOS        :

                                      :            DKT No.: 3:26-cv-95

      Plaintiff,                :

                                        :

v.                                      :

                                        :

JOSEPH TAMMARO in his        :
individual capacity only;           :
SALVATORE DIAZ; in his individual :
capacity only; CARLA OCAMPO,    :
in her individual capacity; RUBEN   :
BURGOS, in his individual capacity   :
only; (First Name Unknown)      :
Dougherty, in his individual capacity :
only; (First Name Unknown)      :
CARPENTER, in his individual     :
capacity only; ROBERT CAREY, in   :
his individual capacity only;       :
MARIBEL BAEZ, in her individual    :
capacity; COURTNEY SEXTON, in   :
her individual capacity only;       :

                                        :

      Defendants.             :           January 20, 2026

## **COMPLAINT**

1.      Donna De Los Santos has faced a five-year nightmare where she was falsely accused of stealing narcotics during the course of her employment with the Connecticut Department of Corrections and criminally prosecuted on the basis of those false accusations. The charges against De Los Santos were dismissed, and an arbitrator awarded her backpay and reinstatement to her job at the Department of Corrections. De Los Santos now seeks full redress for the expenditures and emotional distress that her ordeal has caused her.

**Parties**

2.     Donna De Los Santos is a Connecticut resident and has been employed by the Connecticut Department of Corrections as a licensed practical nurse (LPN) since 2009.

3.     Joseph Tammaro is a Connecticut resident and is employed by the Connecticut Department of Corrections as a correctional captain at York Correctional Institution. He is sued in his individual capacity only.

4.     Salvatore Diaz is a Connecticut resident and a Regional Director of Nursing for the Connecticut Department of Corrections. He is sued in his individual capacity only.

5.     Carla Ocampo is a Connecticut resident and a Regional Chief Operating Officer (RCCO) for the Connecticut Department of Corrections. She is sued in her individual capacity only.

6.     Captain Ruben Burgos is a Connecticut resident and is employed by the Connecticut Department of Corrections as a correctional captain at York Correctional Institution. He is sued in his individual capacity only.

7.     (First Name unknown) Dougherty is a Connecticut resident and is employed by the Connecticut Department of Corrections as a senior official at York Correctional Institution. He is sued in his individual capacity only.

8.     (First Name Unknown) Carpenter is a Connecticut resident and is employed by Department of Consumer Protection as a Drug Control Agent. He is sued in his individual capacity only.

9.      Robert Carey is a Connecticut resident and is employed as a Connecticut State Police officer. He is sued in his individual capacity only.

10.     Maribel Baez is a Connecticut resident and is employed by the Connecticut Department of Corrections as a LPN at York Correctional Institution. She is sued in her individual capacity only.

11.     Courtney Sexton is a Connecticut resident and is employed by the Connecticut Department of Corrections as a LPN at York Correctional Institution. She is sued in her individual capacity only.

## Jurisdiction

12.     The Court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, 2201, and § 1651. It has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Venue is appropriate under 28 U.S.C. § 1391 because all of the parties are domiciled in Connecticut and all of the factual events giving rise to the cause of action occurred in Connecticut.

## Factual Allegations

13.     Donna De Los Santos is an LPN who has been employed by the Connecticut Department of Corrections since 2009.

14.     As a LPN, De Los Santos' duties mainly consisted of dispensing medication to inmates at Connecticut's women's prison, York Correctional Institution.

15.    On or about February 10, 2020 at 3:20 PM, her colleagues, LPNs Maribel Baez and Kelly Bowen, reported a narcotics discrepancy to the Connecticut Department of Corrections.

16.    At 9:30 PM on February 10, 2020, LPNs Felicia Ojeda-Bright and Bowen reported three instances of narcotics tampering to the Connecticut Department of Corrections.

17.    DOC Captain Joseph Tammaro and RDON Salvatore Diaz and Regional Chief Operating Officer (RCCO) Carla Ocampo then began an investigation.

18.    Along with Diaz, Ocampo, Captain Ruben Burgos, Deputy Warden Dougherty, and Department of Consumer Protection Drug Control Agent Carpenter, Captain Tammaro (the DOC investigators) attempted to find an explanation for the discrepancies through a review of video surveillance and witness statements.

19.    This attempt immediately focused on De Los Santos because of accusations against her by her fellow LPNs.

20.    LPN Maribel Baez essentially told investigators that De Los Santos had to be responsible because she had heard rumors that she had previously diverted medication from the prison pharmacy and that she heard from other LPNs that De Los Santos was acting suspiciously on February 9, 2020.

21.    LPN Courtney Sexton claimed that De Los Santos was acting suspiciously because she was quiet when she was usually "bubbly" and had positioned her cart differently than Sexton thought she usually did.

22.    The DOC investigators construed these interviews and the video surveillance footage that they viewed as leaving no doubt that De Los Santos had engaged in criminal conduct and multiple violations of Department of Corrections' policies.

23.    They contacted the Connecticut State Police and initiated a criminal investigation into De Los Santos.

24.    An Eastern District Major Crimes Division Detective, Robert Carey, conducted the police investigation in a manner that almost wholly relied on the DOC investigation.

25.    The DOC investigators also lasered in on a single instance of discipline that De Los Santos had incurred fifteen years prior for diverting medication as confirmation of her guilty.

26.    As a result of the DOC investigators' fixation with De Los Santos' guilt and Detective Carey's total reliance on it, the State of Connecticut arrested De Los Santos and began a criminal prosecution against her, which lasted for almost 4 years.

27.    The case against De Los Santos, however, was built on nothing more than speculation, workplace politics, a sinister plot to deflect misconduct to her, and a take-the-lazy-way-out approach from investigators.

28.    The accusations against De Los Santos really boiled down to a 3-minute window on February 9, 2020 between 9:12 PM and 9:15 PM.

29.    The Defendants essentially alleged that, during that 3-minute window, De Los Santos was alone in the York Correctional pharmacy and removed Adderall

pills from their packaging, placed them in her lunch bag, and replaced them with pill capsules containing powdered Benadryl.

30.     The Defendants, however, did not highlight that the Adderall pill package in question was on the cart for patients with names beginning with A through K.

31.     De Los Santos was responsible for the cart for patients with names beginning with L through Z, and she did not have access to the pill package in question.

32.     The tampered packet was from a patient identified by the initials "HH" and indisputably came from a source that De Los Santos never had access to.

33.     The Defendants found no evidence demonstrating that De Los Santos had any access to that Adderall packet.

34.     The Defendants also failed to highlight that De Los Santos's bag was searched prior to her being escorted out of York Correctional and that search yield no evidence of contraband, including drugs.

35.     Because they unquestioningly accepted the speculative allegations against De Los Santos, the Defendants never investigated any suspect other than De Los Santos even though DNA testing showed another person's DNA on the Adderall packet.

36.     Furthermore, not a single witness observed De Los Santos tampering with any medication.

37. In other words, the entire set of allegations against De Los Santos was built on the Defendants' examination of the video surveillance and their unquestioning acceptance of the rumors and innuendo against De Los Santos.

38. Defendant Tammaro said as much during the arbitration hearing on De Los Santos' grievance against the Department of Corrections for attempting to terminate her.

39. He testified that he lacked sufficient information to tell, one way or another, whether De Los Santos tampered with any medication or not.

40. In fact, Tammaro testified that four medication counts occurred after De Los Santos' alleged tampering that yielded no issues, including long after she had completed her shift for that day.

41. The complete inadequacy of the investigation and any evidence linking De Los Santos to the medication tampering led the arbitrator to reverse De Los Santos' termination.

42. After approximately 4 years of criminal prosecution, the State of Connecticut chose to drop criminal charges for the same reasons at the end of 2024, and those charges were formally dismissed.

43. As a result of the Defendants' actions, De Los Santos has suffered injuries, including but not limited:

    a. Severe emotional distress;

    b. A permanently damaged reputation;

    c. Financial expenditures to defend herself and her reputation;

    d.  Lost employment opportunities.

## COUNT ONE – 42 U.S.C. § 1983 CLAIM FOR MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT

44.    Paragraphs 1 through 43 are hereby incorporated herein.

45.    The Defendants, individually and collectively, relied on workplace politics and prejudices to make criminal allegations against De Los Santos that they knew or should have known were not true.

46.    The Defendants' allegations against De Los Santos caused her to be arrested, criminally charged, and criminally prosecuted for an alleged crime that it was impossible for her to commit.

47.    The Defendants' allegations against De Los Santos caused her criminal prosecution to continue for approximately 4 years.

48.    The Defendants acted without probable cause in securing and enabling the prosecution against De Los Santos to proceed because they knew that De Los Santos could not have committed the crimes that they alleged.

49.    De Los Santos' criminal proceedings terminated in her favor by way of a dismissal.

50.    The Defendants' allegations against De Los Santos were malicious, and they acted with malice in securing, and enabling to continue, the prosecution against her.

51.    As a result of the Defendants' conduct, De Los Santos suffered serious damages – financial, reputational, and emotional.

## COUNT TWO – MALICIOUS PROSECUTION

52.    Paragraphs 1 through 43 are hereby incorporated herein.

53.    The Defendants, individually and collectively, relied on workplace politics and prejudices to make criminal allegations against De Los Santos that they knew or should have known were not true.

54.    The Defendants' allegations against De Los Santos caused her to be arrested, criminally charged, and criminally prosecuted for an alleged crime that it was impossible for her to commit.

55.    The Defendants' allegations against De Los Santos caused her criminal prosecution to continue for approximately 4 years.

56.    The Defendants acted without probable cause in securing and enabling the prosecution against De Los Santos to proceed because they knew that De Los Santos could not have committed the crimes that they alleged.

57.    De Los Santos' criminal proceedings terminated in her favor by way of a dismissal.

58.    The Defendants acted with malice, primarily for a purpose of other than that of bringing the real culprit to justice.

59.    As a result of the Defendants' conduct, De Los Santos suffered serious damages – financial, reputational, and emotional.

## COUNT THREE – MALICIOUS PROSECUTION

60.    Paragraphs 1 through 43 are hereby incorporated herein.

61.    The Defendants, individually and collectively, instituted criminal proceedings against De Los Santos based on nothing more than workplace politics, prejudices, and allegations that they knew or should have known were not true.

62.    The Defendants' allegations against De Los Santos caused her to be arrested, criminally charged, and criminally prosecuted for an alleged crime that it was impossible for her to commit.

63.    The Defendants' allegations against De Los Santos caused her criminal prosecution to continue for approximately 4 years.

64.    De Los Santos' criminal proceedings terminated in her favor by way of a dismissal.

65.    The Defendants used the criminal process to shift blame from their own conduct, advance a workplace politics agenda, and destroy De Los Santos' career at the Connecticut Department of Corrections because of their speculations about whether she had a prior drug addiction and whether she was still battling it.

66.    As a result of the Defendants' conduct, De Los Santos suffered serious damages – financial, reputational, and emotional.

## **PRAYER FOR RELIEF**

A.  Compensatory damages;

B.  Punitive damages;

C.  Costs and attorneys' fees;

D.  Any such other relief that is just and equitable.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq. (ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

## JURY DEMAND

Pursuant to the Seventh Amendment to the United States Constitution, the

Plaintiff, Donna De Los Santos, claims his right for a trial by jury.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq. (ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com